UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RUBIN SIMPSON,

       Plaintiff,                     CIVIL ACTION NO. 06-11077

       v.                          DISTRICT JUDGE SEAN F. COX

LIBERTY LIFE ASSURANCE         MAGISTRATE JUDGE VIRGINIA MORGAN
COMPANY OF BOSTON, d/b/a
LIBERTY MUTUAL, a foreign
insurance company,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

**I. Introduction**

     This matter is before the court on the Motion of Liberty Life Assurance Company of Boston (Liberty) for Entry of Judgment (#12). Plaintiff filed a response and also seeks judgment on the Administrative Record. (#13). Defendant is the insurer for benefits under the short and long term disability plans provided by plaintiff's employer Lowe's Company. Plaintiff is an eligible participant in that program. Plaintiff asserts a claim under ERISA, § 502 (a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), alleging that the termination of long term disability benefits to him by defendant was arbitrary and capricious. Plaintiff alleges that Liberty ignored the opinion of the treating physicians and ignored common sense in its denial. Oral argument was held before the magistrate judge on April 18, 2007. For the reasons discussed in this Report, it is recommended

that the defendant's motion be granted, that of the plaintiff denied, and the determination by the administrator be upheld.

## II.     Legal Standards

### A. ERISA

Congress enacted ERISA to "'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" Aetna Health, Inc. v. Davila, 542 U.S. 200, 208 (2004), quoting 29 U.S.C. § 1001(b) (2000).

A claim involving an Employee Benefit Plan may be brought under the civil enforcement provisions of ERISA and is regarded as arising under federal law. The courts have been directed to develop substantive federal common law as necessary to interpret ERISA and fashion remedies to effectuate the policies underlying ERISA. 29 U.S.C. § 1132(a); Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109-110 (1989). ERISA generally preempts all state laws that relate to Employee Benefit Plans. 29 U.S.C. § 1144(a).

With one exception, federal district courts have exclusive jurisdiction over civil actions brought under ERISA, including claims alleging breach of fiduciary duty, claims requesting equitable relief, other than benefit claims and claims involving statutory penalties under ERISA. 29 U.S.C. § 1132(e)(1). The exception applies to civil actions brought under 29 U.S.C. § 1132(a)(1)(B) to recover benefits under the terms of the Plan, enforce rights under the terms of the Plan, or clarify the participant's rights to future benefits under the Plan. When the exception

applies, federal and state courts have concurrent jurisdiction. 29 U.S.C. § 1132(e)(1). The amount in controversy or the citizenship of the parties is irrelevant. 29 U.S.C. § 1132(f).

**B. Disability Evaluation**

While ERISA governs the Employee Benefit Plan in general, whether a claimant is entitled to disability benefits is determined by the language set forth in the individual Plan. Under the Lowe's Disability Policy, short term disability payments are payable for up to 13 weeks when a covered person's medical condition prevents him from performing the material duties of his own job. AR 0004-0007. Thereafter, a person may be eligible for long term disability benefits. The participant's condition must render him unable to perform the material and substantial duties of his own occupation during the elimination period and the first 24 months of the disability. Thereafter, the condition must prevent him from performing the material and substantial duties of any occupation. Id.

**C. Standard of Review**

The United States Supreme Court held in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115. Where the benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan, the highly deferential arbitrary and capricious standard of review is appropriate. Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996). Thus, a reviewing court should first examine the Plan to determine

whether defendant is a Plan administrator or fiduciary, and whether the required discretion has been given. Federal common law rules of contract interpretation apply to ERISA Plans and those rules dictate that this Court interpret the Plan's provisions according to their plain meaning and in their ordinary and popular sense. Perez v. Aetna Life Ins. Co., 150 F.3d 550, 556 (6th Cir. 1998).

II**I.** Analysis

    **A. The decision is subject to the arbitrary and capricious standard of review.**

In this case, defendant is the Plan administrator charged with authority, and sole discretion, to construe the terms of the policy and determine benefit eligibility under the Plan. Liberty's decisions regarding construction of the Plan terms and benefit eligibility are conclusive and binding. AR 0041. Thus, the administrator's determination is subject to the arbitrary and capricious standard of judicial review. See, Yeager, supra.

    **B. Plaintiff's Employment and Medical Condition**

Plaintiff is a 37 year old male employed by Lowe's home improvement retail stores. He worked as a Customer Service Associate, specifically assigned to the plumbing department. He was covered as an insured under the Lowe's Disability Policy as a result of his employment. His job description is as follows:

> "Greet and acknowledge all customers in a professional manner. Successfully communicate with customers, answering customer questions and resolving complaints. Assist customers in locating, selecting, and loading merchandise. Make customer service the highest priority. Stock merchandise according to planogram. Keep shelves fully stocked and fronted in assigned area. Assure merchandise is correctly displayed and priced. Inform supervisor of stocking needs. Use free time to stock and

- 4 -

straighten shelves and peg hooks.  Provide quick, responsive, friendly customer service."
AR 0251

Job functions essential to a Customer Service Associate include (1) pull overstock from overhead storage racks; (2) operate equipment in assigned area; (3) stand and/or sit continuously and perform job functions for 8 hour shift with meal break; and (4) stand, bend, pull, climb, balance, crouch, handle and move items weighing up to 50 pounds without assistance.  AR 0251, 0252.

Plaintiff has a history of kidney stones.  Between April 12, 2004, to June 4, 2004, he received short term disability leave because of kidney stones and pain associated with ureteral stents used as treatment.  AR 0264-0267.  On August 25, 2004, he went to the emergency room at Providence Hospital with complaints of severe back, flank, and groin pain.  AR 0248.  A CAT scan showed kidney stones.  AR 0249.  Plaintiff was admitted, underwent cystoscopy and ureteroscopy, and continued to suffer from severe pain in the lower back and flank.  He was found to have significant edema in the distal ureter, dehydration of the disc at L5-S1, and disc bulge at L5-S1 and L4-L5.  AR 0228-0231.

**C. Determination by Liberty as to Plaintiff's Benefits**

Defendant Liberty approved the maximum amount of short term benefits under the Lowe's Disability Policy and advised plaintiff of the same in a letter dated December 3, 2004.  AR 0201.  Liberty subsequently evaluated his claim to determine his eligibility for long term benefits.  AR 0050-0051.  Based on information received from plaintiff and his treating physician, Dr. Harris, Liberty approved plaintiff for long term disability effective November 24,

2004 (the first day he was eligible following the 90 day elimination period). Liberty advised plaintiff of this in a letter dated December 20, 2004.

Liberty terminated plaintiff's long term disability benefits on February 23, 2005, after not receiving a response from Dr. Peter Bono, a physician identified by plaintiff as the person treating him for back pain. AR 0180, 0157-59. Liberty sent a second letter to Dr. Bono and did not receive a response. AR 0049, 0124-0125. On March 25, 2005, Liberty received some records from Dr. Bono, including office notes and an MRI. Dr. Bono returned the physical functional capacity assessment forms and restrictions uncompleted with the note that "we cannot fill form; we did not place patient on restrictions or disability." AR 0119. On March 31, 2005, Liberty requested an independent peer review and on April 21, 2005, Dr. Michael Weiss, a board certified orthopedic surgeon, summarized the results of his review of the medical records. AR 0097-99. Dr. Weiss confirmed the diagnosis of plaintiff's condition with respect to the kidney stones but found no objective evidence or findings supporting a diagnosis of lumbar displacement. AR 0098. Dr. Weiss opined that there was not evidence that plaintiff has an impairment or needs restrictions regarding his activity level. Id. Liberty then forwarded that report to Dr. Bono and requested that he review the report and comment, advising plaintiff of the same. When Liberty did not receive a further response from Dr. Bono, it issued its determination disapproving plaintiff's continued receipt of long term disability benefits and sent plaintiff a letter summarizing its efforts and its conclusions. AR 0094-96.

On May 23, 2005, plaintiff sent Liberty more medical records from Dr. Bono which included the doctor's assessment that plaintiff was not "functional at this point," and his

recommendation that plaintiff "go under disability." AR 0092. On June 6, 2005, Liberty called plaintiff and asked him, if in light of the additional medical records, he wished to appeal. AR 0047. Plaintiff stated that he did. Liberty obtained a second peer review of plaintiff's file from Dr. Michael Geoghegan, a board certified orthopedic surgeon. AR 0075-0081. Dr. Geoghegan compared plaintiff's job description with the medical records and opined that plaintiff had the functional capacity to perform the occupation of customer service representative (which he identified as "light work"[1]) as there were no orthopedic evidence or findings which would prevent that. AR 0080. Dr. Geoghegan noted that plaintiff's primary impairment appeared to be his morbid obesity (recorded at 420 pounds). There were no anatomical orthopedic problems identified. Id. On July 18, 2005, Liberty issued its determination denying long term disability benefits. This action followed.

---

[1]This may be incorrect if he was using the job description requiring climbing, balancing, and moving items up to 50 pounds without assistance. Within the social security context, light work is defined as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §404.1567(B).

**IV. Plaintiff's Claims**

Plaintiff alleges that Liberty ignored the opinion of the treating physicians, and ignored common sense in its denial of long term benefits. Plaintiff argues that the determination was inconsistent with the opinions of Dr. Harris and Dr. Bono. First, it should be noted that in the ERISA context, unlike in Social Security disability cases, the opinion of the treating physician is not entitled to any special weight. In Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003), the Supreme Court resolved a split in the circuits and held that the Plan administrators are not bound to accord routine deference to opinions of treating physicians. However, the Court did note that treating physicians may have a greater opportunity to know and observe the patient as an individual and thereby have a greater opportunity to assess a condition. However, in this case, plaintiff's treating physicians offered little or no objective medical evidence or documentation supporting their opinions. Dr. Harris is not an orthopedic specialist and Dr. Bono is a spinal surgeon. Both of the physicians upon whom Liberty relied were board certified orthopedic surgeons who looked at the same objective evidence that the treating physicians had seen. Dr. Bono had originally determined that plaintiff had no restrictions, and then opined that he was not "functional," without additional evidence supporting a change in opinion. The reliance on the conclusions of the outside reviewing doctors is not shown to be arbitrary or capricious.

Neither is Liberty's reliance on the consulting physician's review of the job description, and the determination that plaintiff could perform that occupation. No restrictions or limitations were supported by the medical evidence. Plaintiff's long term benefits during the time period

where the test was whether plaintiff could perform the duties of his "own occupation." It is the duties of "customer service associate" as it is normally performed in the economy (the Department of Labor Job Description) that is relevant in the administrative process. Under that description, the occupation is one at the light exertional level. This job description was provided to Liberty by its vocational department during the administrative review process. See, AR 000009, 0193-0196, 0072). In Osborne v. Hartford Life & Acc. Ins. Co., 465 F.3d 296 (6th Cir. 2006), the court held that the insurer did not act improperly in basing "own occupation" review on the D.O.L. description, rather than on the description of the employee's actual duties which arguably were more strenuous. Thus, Liberty's determination is not shown to have been arbitrary and capricious.

**V. Conclusion**

Accordingly, it is recommended that the defendant's motion be granted, that of the plaintiff denied, and the administrator's determination be upheld.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir.

1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                      s/Virginia M. Morgan
                                      Virginia M. Morgan
                                      United States Magistrate Judge

Dated: June 28, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on June 28, 2007.

                                      s/Jane Johnson
                                      Case Manager to
                                      Magistrate Judge Virginia M. Morgan